755 F.2d 692
 Lloyd HUBBARD, Appellant,
v.
Carl WHITE, Jim Jones, William Arney, Dale Still, S.F.
Perkins, Mr. Humphrey, and J.V. Rockenfield, Appellees.
Clifton FRANKLIN, Harry Little, Paul Williams, and Terry
Walls, Appellants,
v.
Jim JONES, Clarence Williams, William Arney, Larry Nelson,
and Dale Still, Appellees.
Matthew JACKSON, Booker T. Willingthan, Regional Brown, Jabu
Kabaila, Eugene Lewis and Ron Seiter, Appellants,
v.
Jim JONES, C.L. Williams, W.M. Arney, Dale Still, A.L.
Nelson, D.F. Kroeckel, Denver Halley, M.M. Guerin, Mr.
Humphrey, Jerry Hudson, Frank Brown, S.F. Perkins, W.R.
O'Brien, Tom Anderson, and J.V. Rockenfield, Appellees.
Horace BONNER and Levi West, Appellants,
v.
Jim JONES, C.L. Williams, W.M. Arney, Dale Still, A.L.
Nelson, D.F. Kroeckel, Denver Halley, M.M. Guerin, Mr.
Humphrey, Jerry Hudson, Frank Brown, S.F. Perkins, W.R.
O'Brien, Tom Anderson, and J.V. Rockenfield, Appellees.
 No. 83-2704.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 13, 1984.
Decided Feb. 28, 1985.
 
 Donald W. Paule, Clayton, Mo., for appellant.
 Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before BRIGHT, McMILLIAN and BOWMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 This is an appeal from a judgment for defendants rendered after a jury verdict. Plaintiffs are or were inmates of the Missouri Training Center for Men at Moberly, Missouri (MTCM). Defendants are correctional officers, caseworkers, administrative officials and other employees at MTCM. Plaintiffs sued under 42 U.S.C. Sec. 1983 for injuries allegedly inflicted by defendants during a search of plaintiffs' cells on the night and morning of July 3-4, 1983. With the consent of the parties pursuant to 28 U.S.C. Sec. 636(c), a United States Magistrate presided at the trial.[1] Plaintiffs allege error on three grounds: 1) failure to grant a request for change of venue; 2) refusal to permit the use of a specific instance of conduct which occurred after the events at issue to impeach a witness's credibility on cross-examination; and 3) denial of plaintiffs' motion for judgment notwithstanding the verdict. Since we find none of the trial court's actions to constitute prejudicial error, we affirm.
 
 I. Facts
 
 2
 On the evening of July 3, 1983, a disturbance broke out in Wing B of Housing Unit Number 2 of MTCM. This disturbance, which took place in the common area of the wing, involved a group of inmates intoxicated on homemade alcohol. Officer Jackson, who was on duty at the time, attempted to remove one of the more disorderly inmates from the group. After encountering resistance, he summoned assistance, and several officers came to his aid. A melee ensued in which Officer Jackson was killed and several other officers were injured. The officers managed to make their way out of the common area to the control room (rotunda) and to shut the rotunda door, locking the inmates in the common area. At this point, the inmates began beating on the glass separating the rotunda from the common area. In the meantime, the emergency squad was summoned to assist in quelling the riot. Under orders from supervisory personnel, the squad broke out shotguns and fired warning shots into the ceiling and floor of the wing, while ordering the inmates to return to their cells. Finally, all the inmates returned to their cells. The inmates involved in the riot were removed and placed in administrative segregation. The rest of the inmates were locked in their cells and their cell keys were taken away by the correctional officers.[2] Several inmates had received richochet injuries from pellets of shot and were taken for medical attention that evening. No material dispute is raised with respect to the foregoing facts.
 
 
 3
 After the disturbance was quelled, a systematic search for weapons and contraband (a shakedown) was conducted of the entire institution. At the time of the shakedown, the inmates involved in the riot already had been removed from the wing. At trial, it was undisputed that the inmates were cooperative and offered no significant resistance during the shakedown.
 
 
 4
 Plaintiffs alleged that during the shakedown, and without provocation, defendants kicked and beat them and committed other acts of physical violence and verbal abuse against them. Defendants denied these charges and testified that the shakedown was conducted in an uneventful manner. Photographs of injuries allegedly received by inmates during the shakedown were received into evidence. No expert testimony was offered as to the source of these injuries. One officer, after viewing the photographs, testified that the injuries may have been self-inflicted.
 
 
 5
 The jury found in favor of defendants. Judgment was entered accordingly.
 
 II. Discussion
 
 6
 Prior to trial, plaintiffs filed a motion requesting that the jury in the case be drawn from the Southern and Eastern Divisions of the Eastern District of Missouri, rather than from the Northern Division, where the events in question occurred and where the trial took place. In support of this motion, plaintiffs argued that sympathy generated for defendants by pre-trial publicity regarding the riot made it impossible to find impartial jurors in the Northern Division. The trial court denied this motion. Plaintiffs contend that this constitutes reversible error.
 
 
 7
 Although plaintiffs requested only that the jury be drawn from outside the Moberly area, and did not request a change in the location of the proceedings, the trial court was correct in treating the motion as one for change of venue under 28 U.S.C. Sec. 1404(a). The grant or denial of a change of venue is in the discretion of the trial court and may not be set aside absent a clear showing of abuse of discretion. Layne-Minnesota p.r., Inc. v. Singer Co., 574 F.2d 429, 434 (8th Cir.1978). Our search of the record does not reveal that plaintiffs' motion was accompanied by materials that demonstrated the alleged prejudicial publicity. At voir dire and jury selection, plaintiffs apparently lodged no objection that the jurors selected were biased against them or otherwise unable to render an impartial decision. Based on the record before us, the trial court's denial of the motion was clearly within its discretion.
 
 
 8
 Plaintiffs argue that the trial court erred in its failure to permit for impeachment purposes cross-examination of Lieutenant William Arney regarding a demotion resulting from his violation of MTCM regulations. During Arney's direct testimony, he testified that he was a "professional" and therefore would never tell an inmate that he was to receive an "ass-whipping." Trial Transcript (Tr.) at 573. Arney also testified as to professional training he had received from the FBI in handling emergency situations. On cross-examination, plaintiffs' counsel pursued the following line of questioning:
 
 
 9
 Q. I believe, Lieutenant Arney, you described yourself as a professional, is that correct?
 
 
 10
 A. That's correct.
 
 
 11
 Q. Does a professional carry a pistol in his boot on duty, sir?
 
 
 12
 A. No, sir.
 
 
 13
 Q. Weren't you disciplined for that a short time after this incident?
 
 
 14
 Tr. at 588.
 
 
 15
 Defendants' attorney objected to this line of questioning as being irrelevant. At that point, plaintiffs' attorney was permitted to examine the witness outside the presence of the jury. During this examination, Arney admitted to having had in his possession while on duty a pair of brass knuckles and that this infraction resulted in his demotion from the rank of lieutenant. He further stated that he had taken the brass knuckles from an inmate of the prison earlier the same day and had intended to turn them in to his supervisors. The incident occurred approximately three months after the events at issue in the trial.
 
 
 16
 The magistrate sustained defense counsel's objection to the testimony. He reasoned as follows:
 
 
 17
 [I]t would seem to me that because the questions relate to matters that were removed in time past the July 3rd and 4th, and related factual incidents, that because they did not relate to the infliction, even the alleged infliction of any injuries on any inmates and because the court perceives that there's more prejudice involved than any probative value from these questions and answers, I'm going to sustain the objection.
 
 
 18
 Tr. at 593-94.
 
 
 19
 Even assuming arguendo that the trial court erred in excluding this testimony, we still must determine if this ruling prejudiced plaintiffs' rights. See United States v. Solomon, 686 F.2d 863, 874 (11th Cir.1982). Defendants uniformly testified that undue force was neither needed nor used in the shakedown. Moreover, non-defendant MTCM personnel corroborated this testimony. Given the consistency of the testimony of defendants and their witnesses, it strains credulity to suggest that cross-examination of one of the defendants concerning a violation by him of institutional rules several months after the events in question would have affected the jury's decision to credit defendants' version of those events. Therefore, without deciding whether the trial court erred in not permitting this cross-examination to proceed, we find that plaintiffs' case was not prejudiced by the trial court's ruling. The error, if any, was harmless.
 
 
 20
 Plaintiffs' final point on appeal is that the trial court erroneously failed to enter a judgment in their favor notwithstanding the jury's verdict for defendants, when that verdict was against the weight of the evidence. Plaintiffs concede that they did not make a motion for directed verdict at the close of all the evidence. That essential condition precedent not having been satisfied, they were precluded from moving for judgment notwithstanding the verdict after the jury ruled against them and they likewise are barred from raising this issue before this Court. See Fed.R.Civ.P. 50(b); Myers v. Norfolk Livestock Market, Inc., 696 F.2d 555, 558 (8th Cir.1982). In considering the other issues raised on this appeal, however, we necessarily have studied the record in this case. Were the issue properly before us, we would not hesitate to say that there is sufficient evidence in the trial record to support the jury's verdict.
 
 
 21
 The judgment of the trial court is affirmed.
 
 
 
 [1]
 The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri
 
 
 [2]
 MTCM is a medium security facility. Normally, each inmate has a key to his cell which may be used to lock the cell from the outside but not from the inside. This permits an inmate to secure his personal possessions from theft by other inmates