**DAKOTA WESTERN BANK OF NORTH DAKOTA,**
Plaintiff,

v.

**NORTH AMERICAN NUTRITION COMPANIES, INC.,**
Defendant.

No. A1–03–043.

United States District Court,
D. North Dakota,
Southwestern Division.

Sept. 28, 2003.

Richard P. Olson, Olson Burns Lee, Minot, ND, for Plaintiff.

John J. Petrik, Monte Lane Rogneby, Vogel Law Firm, Bismarck, ND, for Defendant.

## ORDER DENYING MOTION FOR CHANGE OF VENUE

HOVLAND, Chief Judge.

This action arises out of loan guarantees executed by Vigortone Ag Products Inc. ("Vigortone") in favor of the Plaintiff, Dakota Western Bank of North Dakota ("Dakota Western"). Vigortone is now known as North American Nutrition Companies, Inc. ("North American Nutrition"). Before the Court is the North American Nutrition's Motion for Change of Venue. The Defendant, North American Nutrition, is requesting that the Court transfer the above-entitled action to the United States District Court for the Northern District of Iowa. For the reasons outlined below, the motion is denied.

## I. BACKGROUND

North American Nutrition is a Delaware corporation headquartered in Lewisburg, Ohio, that is engaged in sale of agricultural products such as livestock feed. It maintains an office in Cedar Rapids, Iowa, but has no offices in North Dakota. The Plaintiff, Dakota Western Bank, is organized under the laws of the North Dakota and has its principal place of business in Bowman, North Dakota.

Between April 17, 2000, and April 17, 2001, Dakota Western loaned approximately $255,000 to Western Feed, Inc. Between June 6, 2000, and June 19, 2001, Dakota Western loaned approximately $100,000 to West River Feed, Inc. Dakota Western required that Vigortone execute Continuing Guarantees of Payment of these to which Vigortone complied. The Guarantees provided that Dakota Western could collect a portion of Western Feed and West River Feed's indebtedness from Vigortone in the event that Western Feed and/or West River Feed failed to pay off their loans by July 15, 2001.

Western Feed and West River Feed defaulted on their loans. However, according to Vigortone, Dakota Western did not attempt to take action against them. Rather, Dakota Western extended the payment terms without first providing written notice to Vigortone. Dakota Western later approached Vigortone to ask for its consent to the restructuring of the notes. Vigortone requested more information regarding the restructuring arrangement but did not receive it until December 2002, by which time Dakota Western had already entered into restructuring agreements with Western Feed and West River Feed.

When Western Feed and West River Feed failed to satisfy their loans, Dakota Western initiated the above-entitled action against North American Nutrition, Vigortone's successor, on April 16, 2003, in an effort to enforce the Guarantees and recover the outstanding balance the loans plus interest. On July 7, 2003, North American Nutrition filed a motion requesting a change of venue to the Northern District of Iowa. The grounds for North American Nutrition's request for a change of venue were that: (1) a majority of the anticipated witnesses reside in Iowa; (2) witnesses residing in Iowa cannot be compelled to appear in North Dakota; and (3) the action could have been initiated in the North District of Iowa by virtue of the fact that the guarantees were executed in Iowa and are governed by Iowa law. Dakota Western filed its response in opposition to North American Nutrition's motion on August 20, 2003. North American Nutrition filed its reply brief on August 29, 2003. This matter is ripe for the Court's consideration.

## II. *LEGAL DISCUSSION*

■ Although federal district courts may transfer any civil action to another district where it might have been brought, the courts generally afford great deference to the plaintiff's choice of forum. *See* 28 U.S.C. § 1404(a) (1993); *see also Hubbard v. White,* 755 F.2d 692, 694–95 (8th Cir. 1985) *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Nelson v. Soo Line Railroad Co.,* 58 F.Supp.2d 1023, 1026 (D.Minn.1999). The moving party bears the "heavy burden of showing that the balance of factors favors" a transfer. *Radisson Hotels, Int'l, Inc. v. Westin Hotel Co.,* 931 F.Supp. 638, 641 (D.Minn. 1996). Courts generally will not grant such a transfer if "the effect is simply to shift the inconvenience to the party resisting the transfer." *Nelson,* 58 F.Supp.2d 1023, 1027.

Courts take the following factors into consideration when determining whether to grant a motion to transfer: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a) (1993). The evaluation of such motions are done on a case-by-case basis following an examination of all relevant factors. *See Terra Int'l, Inc. v. Mississippi Chemical Corp.,* 119 F.3d 688, 691 (8th Cir.1997) (recognizing that the evaluation of a motion to transfer is not limited to the enumerated factors).

### A) *CONVENIENCE*

North American Nutrition asserts that a change of venue is necessitated by the fact that seven of the anticipated fact witnesses reside in Iowa while only three of the anticipated witnesses reside in North Dakota. North American Nutrition adds that five of the witnesses living in Iowa are no longer in its employment and thus cannot be compelled to appear at a trial in North Dakota. *See* Fed.R.Civ.P. 45. While North American Nutrition acknowledges that the deposition testimony of these five witnesses could be presented in lieu of a live appearance at trial, it finds this alternative unacceptable on the grounds that it

would present great hardship and could prejudice the presentation of its case.

Dakota Western responds that North American Nutrition's assertions regarding the location of witnesses is specious. Dakota Western contends that testimony regarding discussions occurring prior to the execution of the guarantees are of little import because such discussions were reduced to writing, i.e., the guarantees themselves. Second, Dakota Western contends that the alleged post-default impropriety between itself and the borrower feed companies would have occurred in North Dakota and, as a result, the anticipated testimony of the North Dakota witnesses is more consequential than that of the Iowa witnesses. Finally, Dakota Western asserts that it would be unable to compel the presence of an indispensable witness if this action were to be moved to Iowa.

### 1) PARTIES

Regardless of where this action is venued, one of the parties will claim to be inconvenienced and placed at a disadvantage at trial. Not surprisingly, both parties have marginalized the value of the other's witnesses while touting the importance of their own. In this case, it is more convenient for North American Nutrition to litigate in Iowa. However, Dakota Western chose to litigate in North Dakota. Its choice must be afforded some deference. *See Hubbard v. White,* 755 F.2d 692, 694–95 (8th Cir.1985) *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Nelson v. Soo Line Railroad Co.,* 58 F.Supp.2d 1023, 1026 (D.Minn.1999). Transferring this action to a district court in Iowa would only serve to shift the alleged inconveniences and hardships from North American Nutrition to the Bank. *Terra Int'l Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 696–97. "Merely shifting the inconveniences from one side to the other ... is not a permissible justification for a change of venue." *Id.*

### 2) WITNESSES

The factor given that is generally afforded the greatest weight by courts considering a motion for change of venue is the convenience of the witnesses. Nevertheless, this factor is not dispositive and must still be weighed against the other relevant factors.

The party with the longest list of potential witnesses who reside in their respective district will not necessarily prevail. *See Terra Intern., Inc. v. Mississippi Chemical Corp.,* 119 F.3d 688, 696 (the "sheer numbers of witnesses will not decide which way the convenience factor tips"). Convenience of the witnesses is not determined from the standpoint of the number of witnesses listed but from a consideration of the qualitative value of the testimony of particular witnesses. Accordingly, the simple fact that more of the anticipated witnesses may reside in Iowa than North Dakota is of little consequence.

North American Nutrition identified twelve potential witnesses in its supporting brief, six of which reside in Iowa. Of the six witnesses residing in Iowa, two are currently employed by North American Nutrition. The remaining four witnesses living in Iowa apparently worked for North American Nutrition at one time but were no longer employed by or otherwise affiliated with North American Nutrition at the time Dakota Western initiated this action. North American Nutrition avers that the presence of these four witnesses at trial in North Dakota cannot be compelled. It keys in on one witness in particular, its former Director of Marketing, Rod Pritchard. Apparently, Pritchard was one of the primary individuals working on North American Nutrition's behalf in the post-default dealings with the Bank. According to North American Nutrition, Pritchard's absence would place it at a significant disadvantage at trial.

Dakota Western discounts the importance of Pritchard's testimony, adding that one of its key witnesses—Gene May, Director of Western Feed and President/Treasurer of West River Feed—could not be compelled to testify if the trial were held in Iowa. According to the Bank, May's presence at trial is necessary as he provided the bulk of information necessary to the negotiations leading up to the execution of the Guarantees. In reply, North American Nutrition minimizes the value of May's testimony stating that he was not a party to the Guarantees.

■ Having reviewed the parties submissions, the Court does not find North American Nutrition's assertions with respect to Pritchard persuasive. Even if Pritchard cannot be compelled to appear there is nothing in the record to indicate that Pritchard would be unwilling to appear in North Dakota. Second, and more important, North American Nutrition has indicated that, in addition to Pritchard, three of its current employees[1] were also primarily involved in post-default discussions on behalf of Vigortone. These three employees would be available to testify on North American Nutrition's behalf if the trial in this matter were held in North Dakota. As these three witnesses were involved in post-default discussions and presumably were privy to the same information as Pritchard, the Court is hard pressed to see how Pritchard's absence would place North American Nutrition at a significant disadvantage. There are three other witnesses at its disposal to testify to the same events. Further, and in the event that Pritchard is unwilling or unable to appear live at trial in North Dakota, his testimony can be presented by videotape *or* live by a teleconference video linkup.

### B) *INTERESTS OF JUSTICE*

There is no dispute that the Guarantees at issue were executed in Iowa and are governed by Iowa law. North American Nutrition asserts that this case should be transferred to the federal court that sits in the state whose substantive laws govern this action. *See Van Dusen v. Barrack,* 376 U.S. 612, 645, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Brockman v. Sun Valley Resorts, Inc.,* 923 F.Supp. 1176, 1183 (D.Minn.1996). The Court is not persuaded that the interests of justice weigh in the favor of transferring this action to the Northern District of Iowa. This case does not involve complex or novel questions of law. Further, the District Court for the Northern District of Iowa's familiarity with the applicable law does not tip the scales in favor of transferring this action out of North Dakota. This Court is capable of navigating the issues and interpreting the applicable Iowa law.

### III. *CONCLUSION*

The Court in its discretion expressly finds that a change of venue is neither required nor warranted in this case. Accordingly, the Court **DENIES** North American Nutrition's Motion for Change of Venue (Docket No. 6).

**IT IS SO ORDERED.**

---

1. These three employees are Joe Kneib, National Account Manager; Harry Gettelman, Business Unit Manager; and Mark Pascal, Chief Operating Officer. Mr. Kneib and Mr. Gettelman work out of Cedar Rapids, Iowa. Mr. Poeschl resides in and works out of Lewisburg, Ohio.