370 F.Supp.2d 904 (2005)
J. Michael KOEHLER, Plaintiff,
v.
Martin M. GREEN, Jules Brody, Martin D. Chitwood, Donald H. Clooney, Joe D. Jacobson, Jonathan F. Andres, Vincent R. Cappucci, Andrew J. Entwistle, Green Schaaf & Jacobson, P.C., Stull Stull and Brody, LLP, Chitwood and Harley, LLP, Clooney and Anderson, PC Defendants.
No. CV 405-367-JFN.
United States District Court, E.D. Missouri, Eastern Division.
May 9, 2005.
*905 Irving Cohen, Joseph D. Pope, Nicole Tuman, Cohen and Pope, PLLC, New York City, James R. Mendillo, W. Jeffrey Muskopf, Freeark and Harvey, Belleville, IL, for Plaintiff.
Mark K. Anesh, Robert J. Pariser, Wilson and Elser, L.L.P., Ian Chesir-Teran, Philip Touitou, Hinshaw and Culbertson, David Ellenhorn, Proskauer Rose LLP, Harold F. McGuire, Jr., Entwistle and Cappucci, New York City, James M. Evangelista, Martin D. Chitwood, Chitwood and Harley, Atlanta, GA, Joe D. Jacobson, Green and Schaaf, St. Louis, MO, for Defendants.
Martin D. Chitwood, Chitwood and Harley, Atlanta, GA, pro se.
Joe D. Jacobson, Green and Schaaf, St. Louis, MO, pro se.

ORDER
NANGLE, District Judge.
Before the Court is Plaintiff's Motion to Transfer (Doc. 39). Plaintiff alleges that this case was improperly transferred to this Court from the Southern District of New York. Specifically, Plaintiff alleges that notice and opportunity to be heard were not given by the District Court before the order to transfer was issued. Plaintiff now asks that this Court retransfer the case to the Southern District of New York. For the following reasons, Plaintiff's motion is DENTED.
Facts
This case arises out of In re BankAmerica Corp. Securities Litigation, No. MDL-1264, a class action that was extensively litigated in the Eastern District of Missouri. On December 14, 2004, Plaintiff filed a complaint in the Southern District of New York, alleging that class and lead class counsel in BankAmerica breached their fiduciary duties and violated the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995. On February 25, 2005, Judge Marrero of the Southern District of New York sua sponte ordered the case be transferred to the Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). In his order, he wrote: "Given that court's familiarity with and continuing jurisdiction over the matters that form the basis of the instant complaint, the Court finds that transfer of the case to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) is warranted." (Doc. 14.) Plaintiff now seeks retransfer of the case to the Southern District of New York, claiming that Judge Marrero's sua sponte transfer was "clearly erroneous" and "manifestly unjust."
Analysis
This Court is reluctant to review Judge Marrero's decision to transfer. See Starnes v. McGuire, 512 F.2d 918, 924 (D.C.Cir.1974) ("[I]t is well established that a transferee court cannot directly review the transfer order itself...."). There is some authority for the proposition that the Court may entertain an independent motion to retransfer once there has been a physical transfer of the file. Id. *906 ("[T]he appropriate course of action when physical transfer has already taken place ... is a new proceeding seeking retransfer in the transferee court, which may be reviewed by the transferee circuit."); see also In re Nine Mile Ltd., 673 F.2d 242, 244 n. 5 (8th Cir.1982). This practice, however, is warned against:
Transferee courts have expressed a strong reluctance to review a transfer order indirectly by means of a motion to retransfer. They have the power to do so if the contention is that the transferor court lacked power to order the transfer rather than merely that the transferor court abused its discretion in applying the statute, but even then the doctrine of law of the case ordinarily will suggest the wisdom of not reexamining the decision of a coordinate court.
15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3846 (2d ed.1986).[1]
The Court is hesitant to proceed with useless acts that do nothing but take up time and cause unnecessary expense, believing that this case will ultimately end up in this district regardless of the decision on this motion. As noted in dicta by the Supreme Court, "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).
However, in an abundance of caution, this Court will examine the issue of venue in this Court. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The grant or denial of a motion to transfer a case under 28 U.S.C. § 1404(a) is within the sound discretion of the trial court. Hubbard v. White, 755 F.2d 692, 694 (8th Cir.1985).
Plaintiff proffers several reasons why the case should be retransferred to New York. Specifically, New York was the Plaintiff's choice of forum. See Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc., 244 F.Supp.2d 1015, 1022 (E.D.Mo.2002) ("Courts generally give great deference to a plaintiff's choice of forum."). Additionally, Plaintiff argues that New York is where several of the Defendants are located and where some of the events from which this litigation arose occurred.
*907 While the Court considers these factors, it is also guided by the many ties this case has with the Eastern District of Missouri. The underlying BankAmerica multidistrict litigation had its beginning when the Judicial Panel on Multidistrict Litigation centralized a group of approximately twenty-seven class action suits in the Eastern District of Missouri. These twenty-seven cases had been filed in various federal district courts from all over the country.[2] The case was thereafter litigated extensively and ultimately settled in the Eastern District of Missouri.
Additionally, numerous witnesses and parties to Plaintiff's case are located in the Eastern District of Missouri. Specifically, Defendants Joe D. Jacobson, Jonathan F. Andres, Donald H. Clooncy and Martin M. Green are located in the Eastern District of Missouri, as are witnesses Kevin Kloster, David P. Octting and Mitchell A. Margo. Moreover, representatives of potential New York-based witnesses, Entwistle & Cappucci and Stull, Stull & Brody, stated in open Court that the law firms were not inconvenienced by the current venue of the case.
The Court further notes that while it might be generally helpful to give a party notice and opportunity to be heard before a case is transferred, here the facts are so clear and convincing and obvious, that it is easy to see why Judge Marrero of the Southern District of New York decided sua sponte to transfer this case to the Eastern District of Missouri.[3] This case is essentially an outgrowth of the BankAmerica case, an action that has been ongoing in this district since 1999. Further, in an order in the BankAmerica case dated October 15, 2002, the Court stated: "The Court shall retain jurisdiction over this case for all matters relating thereto, including the administration, interpretation or enforcement of the settlement agreement and the payment of fees and expenses as set forth in this Order." In re BankAmerica Corp. Securities Litigation, 228 F.Supp.2d 1061, 1069 (E.D.Mo.2002).[4] Given the inextricable link between this case and the underlying BankAmerica case, as well as this Court's continuing jurisdiction over the BankAmerica matter, the Court feels Judge Marrero's action was proper.[5]
Based on the above factors, the Court concludes that venue is proper in the Eastern District of Missouri. Plaintiff may seek to have this decision reviewed by an appellate court. Needless to say, this Court is hesitant to predict what an appellate *908 court will do, but it does seem quite evident that this case will ultimately end up in the Eastern District of Missouri.
Accordingly, the Court DENIES Plaintiff's Motion to Transfer.
NOTES
[1] The Court notes that it would have been preferable for Plaintiff to seek review of Judge Marrero's order in the Second Circuit by writ of mandamus or other available means of review. The Court also acknowledges that Plaintiff's chance for review by the Second Circuit has all but vanished now. Plaintiff argues that the hasty transfer of the case by the Southern District of New York prevented him from obtaining a writ of mandamus. The Court, however, points out that Plaintiff made no attempt to seek review of the transfer order until six weeks after the transfer was made. If Plaintiff had acted more diligently, he might have been able to secure review of Judge Marrero's order in the Second Circuit, despite the physical transfer of the case.

The Court, in particular, notes the Second Circuit case of In re Warrick, 70 F.3d 736 (2d Cir.1995). In that case, after granting defendants' motion to transfer, the transferor court violated a local rule by failing to delay the physical transfer of the case. The plaintiff then sought a writ of mandamus in the Second Circuit. Despite the physical transfer of the file, the Second Circuit took the petition under consideration, reasoning that a diligent plaintiff should not be precluded from seeking mandamus, just because "the district court acted hastily in transferring the case's papers." Id. at 740. There, the Second Circuit had the transferor court request the transferee court to return the case file.
[2] One of the reasons the Judicial Panel on Multidistrict Litigation chose St. Louis as the best situs was that a large number of Nations Bank shareholders came from Boatmen's Bank, a long-time St. Louis banking institution which had merged with Nations Bank a few years prior.
[3] But see Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267 (3d Cir.1962) (holding that failure to give notice and hearing before issuing transfer order deprived district court of power to issue order and invalidated order).
[4] Plaintiff argues that the issues of this case do not implicate the "administration, interpretation or enforcement of the settlement agreement and the payment of fees and expenses as set forth in this Order." (Doc. 50, p. 6.) The Court disagrees. The Court believes that the payment of attorney's fees is central to Plaintiff's breach of fiduciary duty claims. Specifically, Plaintiff seeks disgorgement of attorney's fees in his claim for damages. (Doc. 1, p. 27.) Further, it seems clear that this case "relates" to the BankAmerica case.
[5] The Court feels that any harm resulting from a lack of notice and hearing has been lessened by this Court's consideration of this matter. This Court has entertained Plaintiff's Motion to Retransfer, Defendants' Response, and Plaintiff's Reply (Docs. 39, 43, and 50). The Court also discussed this topic thoroughly at a hearing on April 19, 2005 (Doc. 47).