[No. 13261–0–I.   Division One.   January 6, 1986.]

CASTLE & COOKE, INC., *Respondent,* v. GREAT
AMERICAN INSURANCE COMPANY, *Appellant.*

*William R. Hickman* and *Reed, McClure, Moceri, Thonn & Moriarty,* for appellant.

*Thomas G. Richards, W. George Bassett, Mark S. Northcraft,* and *Bassett, Mackin, Sorenson & Peizer,* for respondent.

GROSSE, J.—This is a declaratory judgment action brought by Castle & Cooke, Inc., against its insurer Great American Insurance Company for breach of contract and for bad faith denial of its duty to defend. At issue is a Great American policy in effect from October 1, 1972 until January 1, 1977.

On March 22, 1974, the complaint in the case of Atonio v. Wards Cove Packing Co., Castle & Cooke, Inc., d/b/a Bumble Bee Seafoods, and Columbia Wards Fisheries was filed

in federal district court.[1] An amended class action complaint was served on Castle & Cooke on May 15, 1974. On June 21, 1976, an order was entered in the Atonio case certifying the class of all "nonwhites who are now, will be or have been at any time since March 20, 1971 employed by Wards Cove Packing Company, Inc. or Bumble Bee Seafoods Division of Castle and Cooke, Inc. . . ."

By letter dated April 27, 1976, Great American was notified of the Atonio lawsuit and served with a copy of the amended complaint. By letter dated October 12, 1976, Great American denied coverage under its policy and refused to defend Castle & Cooke in the Atonio lawsuit citing three reasons: (1) the exclusion contained in the policy for claims by employees; (2) the definition contained in the policy of "personal injury" as it relates to allegations of discrimination committed by the insured; and (3) the definition of "occurrence" contained in the policy as it related to intentional acts by the insured. On October 9, 1980, Castle & Cooke again tendered the defense of the Atonio action to Great American. Great American continued to deny coverage. In October of 1981, Castle & Cooke brought the suit seeking declaratory relief and damages that is the subject of this appeal.

Castle & Cooke's motion for summary judgment was granted. The trial court found that Great American should have provided a defense to Castle & Cooke in the Atonio litigation; that Great American had a duty to provide a defense of claims for disparate impact in the Atonio litigation; and that Great American had a duty to pay any money judgment against Castle & Cooke obtained by the Atonio plaintiffs based on claims of disparate impact. A final judgment was entered incorporating the partial summary judgment and granting Castle & Cooke judgment

---

[1]The United States District Court for the Western District of Washington issued a judgment for the defense in the Atonio litigation. The decision contains disparate impact and disparate treatment analyses. Atonio v. Wards Cove Packing Co., Inc., No. C–745–145S (W.D. Wash. Oct. 31, 1983).

against Great American in the amount of $352,772.88. The money judgment represented Castle & Cooke's share, or 25 percent, of the cost of the Atonio defense incurred as of January 12, 1983. Great American sets forth four issues, two of which were the focus of its brief and oral argument, and two other issues raised only in a rather perfunctory manner. These latter two we will treat as preliminary matters: Great American argues that it had no duty to defend because of the employee exclusion and because of Castle & Cooke's delay in complying with the notice requirements of the policy.

The Great American policy obligates the insurer to "pay all sums for which Castle & Cooke shall become legally obligated to pay as damages because of personal injury." Personal injury is defined to include racial discrimination not committed by or at the direction of the insured. The policy contains an exclusion for mental anguish or bodily injury to any employee arising out of and in the course of his employment. The Atonio complaint alleges lost wages and damages for physical suffering, arbitrary termination, and mental anguish.

The employee exclusion of the Great American policy is clear and unambiguous and must be given effect in accordance with its plain meaning. *Abbott v. General Accident Group*, 39 Wn. App. 263, 267, 693 P.2d 130 (1984). Although there is no insurance coverage and no duty to defend employee claims for bodily injury or mental anguish, there is a duty to defend nonintentional employment race discrimination claims which allege damages for lost wages and arbitrary termination. Only so reading the policy comports with the principle that requires this court to read individual clauses in light of the whole contract. *See Holter v. National Union Fire Ins. Co.*, 1 Wn. App. 46, 459 P.2d 61 (1969). The principle authority relied upon by Great American for its argument, *Omark Indus., Inc. v. Safeco Ins. Co. of Am.*, 590 F. Supp. 114 (D. Or. 1984), is distinguishable. *Omark* involved a sex discrimination complaint alleging damages solely for emotional distress. Thus,

the Oregon court was correct in its interpretation that the employee exclusion negated the company's duty to defend.

Great American has two arguments with respect to untimeliness. First, it argues that because the declaratory judgment action with regard to the duty to defend was not filed within 6 years of service upon Castle & Cooke of the Atonio complaint, the action is barred by the statute of limitations applicable to written contracts contained in RCW 4.16.040(1). Second, it argues that Castle & Cooke failed to comply with policy provisions requiring notice to them of the pendency of this Atonio lawsuit. Notice was given approximately 2 years after initial service of the complaint on Castle & Cooke.

As to the first contention, *Bush v. Safeco Ins. Co. of Am.*, 23 Wn. App. 327, 596 P.2d 1357 (1979) is dispositive. There, the Court of Appeals held that the statute of limitations in a duty to defend case commences to run from the time a final judgment is rendered in the underlying lawsuit. Thus, the statute did not begin to run in this case until October 31, 1983, rendering the complaint well within the 6–year statute. Great American's arguments with respect to its second contention on timeliness are equally without merit. Great American failed to make the requisite showing of actual prejudice resulting from the tardiness of respondent's actions in giving it notice of the Atonio complaint or in retendering the defense to them some 4 years after the initial tender had been rejected. These circumstances and claims of prejudice require affirmative proof. *See Thompson v. Grange Ins. Ass'n*, 34 Wn. App. 151, 660 P.2d 307 (1983).

We now turn to the main issues of Great American's appeal: (1) whether Great American had an obligation to go behind the Atonio complaint and do further investigation before refusing to defend Castle & Cooke; and (2) whether the "occurrence" which triggered the duty to defend Castle & Cooke took place before the effective date of the policy.

Great American argues that it was obligated only to review the Atonio complaint to determine coverage and

that since the complaint clearly states only a disparate treatment claim for racial employment discrimination, there is no policy coverage and no duty to defend. This argument is difficult to sustain in view of the complexity of employment discrimination law and in view of the fact that the Atonio case was actually tried on both disparate impact and disparate treatment theories.

The parties agree that Great American has a duty to defend disparate impact or unintentional race discrimination cases under the policy. A prima facie case of discrimination on the basis of disparate impact is made by proof of (1) the existence or adoption of certain outwardly neutral employment practices; and (2) a significantly adverse or disproportionate impact on persons of a particular racial minority produced by those facially neutral acts or practices. *Spaulding v. UW,* 740 F.2d 686, 705 (9th Cir. 1984), *cert. denied,* 105 S. Ct. 511 (1984).

The Atonio complaint is an example of notice pleading.[2] No terms of art such as disparate treatment, disparate impact, or intentional or unintentional discrimination are used. It generally alleges that certain employment and employment benefits policies resulted in racial discrimination. The allegations contained in the complaint could well be a result either of intentional treatment or of utilizing policies that on their face are not racially discriminatory, *i.e.,* housing or job assignments based on seniority, tests, height and weight requirements, or education or training

---

[2]For example, paragraphs 37–40 of the Atonio complaint read as follows:

"37. Defendants hire Asians and other non–whites as cannery workers pursuant to collective bargaining agreements with Local 37, International Longshoreman's Warehouseman's Union, and have at all times material hereto. Hiring and dispatching are done in Seattle, King County, Washington.

"38. Under these agreements, named plaintiffs and members of their class are dispatched to Alaska to work as cannery workers during the fishing season, after which they return to their respective homes.

"39. Defendants employ whites as mechanics, fishermen members of the "beach gang" and in other and more desirable job classifications.

"40. These white workers are hired, dispatched and employed separately and under different arrangements from those of plaintiffs and members of their class."

requirements. There is no way to tell from the complaint whether the Atonio plaintiffs claim disparate impact or disparate treatment or both. The amended complaint was, however, sufficient to allow the Atonio case to be tried on both theories.

In two recent cases, appellate courts have reviewed employment discrimination complaints which were as general as the Atonio complaint and have held that the allegations contained in those complaints allowed for both disparate treatment and disparate impact theories. *School Dist. 1, Multnomah Cy. v. Mission Ins. Co.,* 58 Or. App. 692, 650 P.2d 929, 940 (1982); *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178 (7th Cir.), *cert. denied,* 449 U.S. 1033 (1980).

■ Although generally an insurer's duty to defend is determined from the allegations of the complaint, Great American cannot stand solely on the Atonio complaint to deny coverage. Disparate treatment and disparate impact theories are highly technical. During oral argument, counsel for Great American admitted confusion over the two theories. Because the complaint does not clearly indicate the Atonio plaintiffs' theories and because of the complexity of employment discrimination law, Great American had an obligation to investigate the matter. Other decisions of this court have required further investigation by insurers in order to determine whether there is a duty to defend. In *Insurance Co. of N. Am. v. Insurance Co.,* 17 Wn. App. 331, 562 P.2d 1004 (1977), *review denied,* 89 Wn.2d 1013 (1978), the Court of Appeals rejected the argument that Pennsylvania had no duty to defend because a complaint did not specifically allege liability within the terms of coverage. Pennsylvania's policy obligated Pennsylvania to pay damages for bodily injury caused by an occurrence and arising out of the ownership, maintenance, or use of an aircraft. The complaint alleged that an employee of the insured helicopter company failed to extinguish a cigarette which ignited forest debris and resulted in a fire. The court stated that Pennsylvania had a duty to investigate the facts

to determine whether the occurrence arose from the owner-ship, maintenance or use of an aircraft because the circum-stances of the negligent failure to extinguish the cigarette were not fully recited in the complaint. *See also Farmers Home Mut. Ins. Co. v. Insurance Co. of N. Am.,* 20 Wn. App. 815, 583 P.2d 644 (1978), *review denied,* 91 Wn.2d 1014, *cert. denied,* 442 U.S. 942, 61 L. Ed. 2d 312, 99 S. Ct. 2885 (1979), where the Washington Court of Appeals held that the insurer's duty to defend and pay required an analysis of all of the facts and was not limited to those matters recited in the injured party's complaint.

We now turn to the question of whether the Atonio com-plaint alleges an "occurrence" during the policy period which triggers coverage and the insurer's duty to defend.

The Great American policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury, bodily injury or property damage neither expected nor intended from the standpoint of the insured". Great American argues that the Atonio complaint alleges discrimination against Asians and other nonwhites for over 50 years; therefore, the "accident or unintentional act" by Castle & Cooke which resulted in "personal injury" occurred before the effective date of the policy. In support Great American cites *Appa-lachian Ins. Co. v. Liberty Mut. Ins. Corp.,* 507 F. Supp. 59 (W.D. Pa. 1981), *aff'd,* 676 F.2d 56 (3d Cir. 1982).

The discriminatory acts alleged in *Appalachian* were the adoption, in 1965, by Liberty Mutual of employment poli-cies applicable to female employees in the claims depart-ment. Several of these employees filed EEOC complaints in May of 1971 alleging that they were discriminated against on the basis of their sex as a result of those policies. Subse-quently, a class action was filed in federal district court. Liberty Mutual was insured by Appalachian from August 1, 1971, until August 1, 1974. The federal district court litiga-tion was commenced in February of 1972. Appalachian refused to defend the lawsuit and Liberty Mutual sued.

The court determined the adoption of the 1965 policies

as a single occurrence which took place when those policies produced injury to the female employees and that for purposes of coverage that "effect" took place when the injuries first manifested themselves. Thus, coverage was denied because the injuries to the female employees were manifest immediately upon promulgation of the discriminatory 1965 policies which was before the effective date of the policy in 1971. In any event the filing of the EEOC complaint by these employees preceded the effective date of the policy.

■ Our case is distinguishable. We are faced with no single clearly ascertainable date of adoption of employment policies that form the basis for the Atonio lawsuit. Also, we do not face a situation where the insured had knowledge of the claims prior to procuring the insurance. However, even if *Appalachian* is not so readily distinguished, we do not find it persuasive. The reasoning of the Third Circuit is not consistent with the only Washington case that construes the term "occurrence." *Gruol Constr. Co. v. Insurance Co. of N. Am.*, 11 Wn. App. 632, 524 P.2d 427 (1974). Gruol Construction's defective backfilling in 1963 resulted in dry rot, not discovered until 1968. The Court of Appeals framed the coverage question as one of whether an occurrence must of necessity be a single isolated event or whether it can be a continuing condition or process. The court held that where, by its nature, damage is continuous, the occurrence is continuous. Application of the reasoning in *Appalachian* might well have dictated a different result. The reasoning of *Gruol* is consistent with that of *Transport Ins. Co. v. Lee Way Motor Freight, Inc.*, 487 F. Supp. 1325 (N.D. Tex. 1980), a suit to determine Transport's liability under an excess policy to Lee Way Motor Freight which had been found liable for race discrimination. The District Court found that Lee Way Motor Freight's pattern and practice of racial discrimination (a disparate impact) was a single occurrence. The court also rejected Transport's argument that it was not liable for back pay awards resulting solely from acts which occurred prior to the effective date of the policy. The court reasoned that the definition of occurrence includes

causes resulting in injury during the policy period and that those discriminated against were damaged on a continuing basis as long as Lee Way Motor Freight maintained its discriminatory policies. In short, the court found the insurer liable for back pay even in instances where the acts giving rise to the award occurred prior to the policy period. *Transport,* at 1331.

Castle & Cooke's acts of discrimination were alleged to have been long standing. The named Atonio plaintiffs were employed during the effective period of Great American's policy and presumably suffered injury from Castle & Cooke's discriminatory policies during the policy period. We hold that the *Gruol* and *Transport* cases must be read together such that the determination of "occurrence" is made by reference to when the injury giving rise to the claim occurred. Castle & Cooke's discriminatory policies injured the Atonio plaintiffs during the period of their seasonal employment as cannery workers. Those periods of employment within the policy period were covered even if the discriminatory practice or policy was adopted prior.

The Atonio injuries from Castle & Cooke's discrimination were occurrences within the policy period. Great American had an obligation to investigate the Atonio complaints further to determine coverage. Because the Atonio case was pleaded and tried, at least in part, on a disparate impact theory Great American had a duty to defend Castle & Cooke.

Castle & Cooke cross–appealed the trial court's dismissal of the claim that Great American violated the Consumer Protection Act (CPA), RCW 19.86, by denying coverage to Castle & Cooke. Although Castle & Cooke's motion for summary judgment does not specifically refer to the CPA, the bad faith claim was included in its brief in support of the motion for summary judgment and in Great American's reply brief and was apparently argued to the trial court. Castle & Cooke relied on one piece of evidence to prove a per se violation of the CPA—a memorandum of a supervisor of Great American's San Francisco office which opines

518

that the coverage question will not be a simple one and which discusses exclusions contained in the policy.

█ Castle & Cooke had the burden of making an evidentiary showing which would entitle it to a judgment as a matter of law. It was required to show that Great American acted in bad faith; that its denial of coverage was frivolous and unfounded. *Miller v. Indiana Ins. Cos.,* 31 Wn. App. 475, 642 P.2d 769 (1982). Castle & Cooke did not meet its burden. From this record, where there are no material issues of fact, we cannot hold that the trial court's dismissal of the CPA claim was error as a matter of law. A denial of coverage based on a reasonable interpretation of the policy is not bad faith. *Miller v. Indiana Ins. Cos., supra.* For the same reason, we hold that Great American's appeal is not frivolous and we deny Castle & Cooke's claim for attorney fees. Accordingly, the partial summary judgment and judgment are affirmed.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied February 5, 1986.

Review denied by Supreme Court May 6, 1986.