Parnel Pierre PLANTE, Mary Elizabeth Plante, husband and wife, and Ashley Plante, a minor, and Mark S. Sandness, Sheila M. Sandness, Heather N. Sandness, a minor, and Brea M. Sandness, a minor, Plaintiffs and Appellees,

v.

COLUMBIA PAINTS, an Idaho corporation, Defendant and Appellee,

and

The Hartford Accident and Indemnity Company, an insurance company, Defendant and Appellant.

Civ. No. 920222.

Supreme Court of North Dakota.

Dec. 22, 1992.

Wheeler Wolf, Bismarck, and Hvass, Weisman & King, Minneapolis, MN, for plaintiffs and appellees Parnel Pierre Plante, Mary Elizabeth Plante, and Ashley Plante. Appearance by David L. Peterson.

Lucas Law Office, Bismarck, and Faegre & Benson, Minneapolis, MN, for plaintiffs and appellees Mark S. Sandness, Sheila M. Sandness, Heather N. Sandness, and Brea M. Sandness. Appearance by A. William Lucas and Scott W. Johnson.

Bair, Brown & Kautzmann, Mandan, for defendant and appellee Columbia Paints; argued by Malcolm H. Brown.

Jeffries, Olson & Flom, Moorhead, MN, for defendant and appellant The Hartford Acc. & Indem. Co.; argued by Sara B. Gullickson.

JOHNSON, Justice.

The Hartford Accident and Indemnity Company (Hartford), has appealed from a district court summary judgment entered in a declaratory judgment action brought to determine the coverage provided by a Hartford insurance policy issued to Columbia Paint Company, Inc. (Columbia). We conclude that the district court erred in ruling that North Dakota law was applicable, reverse the judgment, and remand for entry of judgment consistent with this opinion.

On July 2, 1987, Parnell Plante and Mark Sandness were severely injured in an explosion in the basement of a Mandan residence. The explosion occurred while Plante and Sandness were working as painters and using paint manufactured and sold by Columbia. Plante and Sandness each filed an action to recover damages for their injuries.

Parnell Plante, and Mary and Ashley Plante, his wife and daughter, filed a declaratory judgment action to determine the coverage provided by a Hartford insurance policy issued to Columbia. Mark Sandness, Sheila M. Sandness, Heather N. Sandness, and Brea M. Sandness intervened.

The insurance policy provides:

"The Company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of ... *bodily injury* or ... *property damage* to which this insurance applies, caused by an *occurrence*."

An occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in *Bodily Injury* or *Property Damage* neither expected nor intended from the standpoint of the *Insured*." (Emphasis in original.) An amendatory endorsement to the policy provides a bodily injury and property damage liability limit of "$1,000,000 EACH OCCURRENCE" and an aggregate liability limit of "$1,000,000 AGGREGATE—DIVISION 1."[1]

Arguing that its policy is not ambiguous and "explicitly provides for a maximum aggregate limit of $1,000,000.00 coverage for any and all claims arising out of the incident which is the subject matter of the underlying actions," Hartford moved for summary judgment of dismissal. The trial court denied Hartford's motion and ordered summary judgment in favor of Plantes, Sandnesses, and Columbia, ruling: (1) that North Dakota law applies in determining

the coverage provided by the Hartford insurance policy; (2) "that the underlying action is based on multiple causes and thereby there are multiple occurrences," which produced multiple injuries; and (3) that "in each of the actions now pending the plaintiffs' recovery is limited at $1,000,000 (i.e., one million per action should Columbia be found to be at fault on whatever theory of recovery the jury finds supported by the evidence)." Judgment was entered and Hartford appealed.

Hartford contends that the trial court improperly applied North Dakota law, rather than Washington law, in interpreting the Hartford insurance policy, and that the trial court erred in concluding that the underlying action is based upon multiple causes, arguing that there was only one occurrence. We agree.

In *Issendorf v. Olson*, 194 N.W.2d 750 (N.D.1972), this court adopted the significant contacts approach to deciding choice-of-law questions in tort cases with multistate factual contacts. The significant contacts approach is also appropriate in contract cases with multistate factual contacts.[2]

In deciding which of two or more jurisdictions "has the more significant interest with reference to a particular issue" [*Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386, 389 (N.D.1986)], we have applied the choice-influencing considerations propounded by Professor Leflar:

"A. Predictability of results;

"B. Maintenance of interstate and international order;

"C. Simplification of the judicial task;

"D. Advancement of the forum's governmental interests;

"E. Application of the better rule of law."

---

1. While we find only one occurrence, we would reach the same ultimate result by construing the aggregate liability limit.

2. Previously, we have applied the significant contacts approach in two insurance contract cases in which the parties agreed that that approach was appropriate, without squarely deciding if the significant contacts approach is otherwise applicable in contract cases. *Vigen Constr. Co. v. Millers Nat'l Ins. Co.*, 436 N.W.2d 254 (N.D.1989); *Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386 (N.D.1986).

Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law*, 41 N.Y.U.L.Rev. 267, 282 (1966). The relative importance of the five considerations "varies according to the area of the law involved, and all should be considered regardless of area." *Id.* See also, Robert A. Leflar et al., *American Conflicts Law* § 95 (4th ed. 1986).

There are a number of multistate contacts to be considered. Parnell Plante and Mark Sandness are North Dakota residents who were injured in an explosion in North Dakota while using a Columbia paint that had been sold to their employer, a North Dakota painting company, by a Columbia corporate store located in North Dakota. Plante and Sandness filed personal injury actions in North Dakota. Columbia's insurance policy from Hartford was intended to provide coverage for Columbia's retail functions in North Dakota, as well as in other states.

Columbia obtained the Hartford insurance policy through Jones & Mitchell (Jones), a Washington insurance broker and agent. Jones delivered the policy to Columbia in Washington. Columbia paid the insurance premiums to Jones in Washington and the policy was intended to cover Columbia's retail and manufacturing functions in Washington, as well as in North Dakota and other states. Columbia maintained corporate headquarters in Washington, as well as in Montana.

Columbia is an Idaho corporation. Hartford is a Connecticut corporation. The insurance policy was intended to cover Columbia's retail and manufacturing functions in Idaho, Montana, and South Dakota, as well as in Washington and North Dakota. The paint involved in this case was produced in Columbia's plant in Helena, Montana, and shipped from there to North Dakota.

■ North Dakota's contacts are primarily related to the underlying tort claims. The contacts related to the insurance contract between Hartford and Columbia are primarily Washington contacts. "[T]he most significant contacts are those bearing upon the contractual relationship" (*Apollo,*

*supra,* at 390) between Columbia and Hartford, and we examine those contacts in light of Professor Leflar's "choice-influencing considerations."

### A. Predictability of results

" 'Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions.' " *Apollo, supra,* at 390, quoting *Restatement (Second) of Conflict of Laws* § 6, comment i (1971) [hereinafter *Restatement*]. A liability insurance contract is a transaction to which parties are likely to give advance thought. "[P]arties to a consensual transaction ... should be able to plan their transaction as one with predictable results." R. Leflar, 41 N.Y.U.L.Rev. 267, 283 (1966). Ideally, the "parties to a consensual transaction should be able to know at the time they enter upon it that it will produce, by way of legal consequences, the same socioeconomic consequences ... regardless of where litigation occurs so that forum-shopping will benefit neither party." Leflar et al., *American Conflicts Law, supra,* § 103, p. 290. The purpose of protecting parties' justified expectations ought to be served "even when the parties do not think about choice of law." *Id.* "Since there is usually no fixed place for performance of insurance policies, the law of the place of making has more often been taken as determinative of rights under them than with other types of contracts." *Id.,* § 153 pp. 433–434. *Restatement, supra,* § 188. The following contacts are to be taken into account in determining the law applicable to a contract issue:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicile, residence, nationality, place of incorporation and place of business of the parties." (*Restatement, supra,* § 188.)

The rights created by a casualty insurance contract are ordinarily determined "by the local law of the state which the parties understood was to be the principal location of the insured risk." *Restatement, supra,* § 193. However, the location of an insured risk has less significance when "the policy covers a group of risks that are scattered throughout two or more states." *Restatement, supra,* § 193, comment *b.* We conclude Hartford and Columbia are more likely to have thought that the coverage provided would be determined in accordance with the law of Washington, where the contract was negotiated, the policy was delivered, and the premiums were paid, than in accordance with the law of any other state.

## B. Maintenance of interstate and international order

"Choice-of-law rules ... should seek to further harmonious relations between states and to facilitate commercial intercourse between them." *Apollo, supra,* at 390, quoting *Restatement, supra,* § 6, comment *d.* "The great political interest of our states, ..., is primarily in a need for systematization, for an orderliness that will make our federal system work with reasonable efficiency. Deliberate preference for local law and local persons, unaccompanied by independent justification, is a disregard of this interest." Leflar et al., *American Conflicts Law, supra,* § 104, pp. 292–293. A state's application of its law to a transaction whose significant contacts are primarily with another state may induce retaliation in kind, which would not further essential commercial intercourse. Choice-of-law rules should avoid such frictions.

## C. Simplification of the judicial task

"It will usually be easier for the forum court to apply its own law than any other." Leflar et al., *American Conflicts Law, supra,* § 105, p. 294. In construing an insurance policy when there are contacts with this and another state, we have said that "we see no particular difficulty in applying either state's rules for construing insurance policies." *Apollo, supra,* at 390. However, the question of whether multiple causes of a single incident, such as an explosion, fire, or collision, can constitute multiple occurrences, increasing the amount of insurance coverage, is one of first impression in this state, but has been addressed by Washington courts. It is simpler to apply Washington's law than to formulate our own.

## D. Advancement of the forum's governmental interests

A state's governmental interest in a case is discoverable by determining if its contacts "give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case." *Leflar* et al., *American Conflicts Law, supra,* § 106, p. 295. "[T]he mere fact of the domicile of a party, or of both parties, in a state will often not be enough to give rise to a real governmental interest in that state." *Id.,* at 296. In *Apollo,* we said:

"North Dakota can have no substantial governmental interest in regulating the relationship between a Minnesota insurance company and its Minnesota insured or in construing the contractual agreement between them in accordance with North Dakota law when the Minnesota contacts are much more significant than the North Dakota contacts." (382 N.W.2d at 391.)

Similarly, we believe that North Dakota can have no substantial governmental interest in regulating the relationship between a Connecticut insurance company and its Idaho insured, which had its corporate headquarters in Washington, where the insurance policy at issue was obtained and delivered, and where the premiums were paid.

The most compelling North Dakota contact here is that the injured parties are North Dakota residents. Protecting North Dakota residents whenever North Dakota has any contacts with a controversy, however, is the kind of "chauvinistic parochialism" [R. Leflar, *The Nature of Conflicts Law,* 81 Col.L.Rev. 1080 (1981) ], sought to be avoided by modern choice-of-law analysis.

**E. Application of the better rule of law**

The insurance coverage question presented in this case is one of first impression in this state. Our rule of law has not yet been formulated. If we were to formulate a North Dakota rule of law to apply in construing the policy language different than the applicable Washington rule of law, our belief in our own rule would be "insufficient under the circumstances presented in this case to override other relevant considerations militating in favor of the application of [Washington] law in the construction of the insurance policy at issue." *Apollo, supra,* at 391.

We conclude that Washington is the state with the most significant contacts with the insurance policy and that the trial court erred in ruling that North Dakota law was applicable.

Washington courts have decided a number of cases relevant to the insurance policy question involved here. In *Truck Ins. Exch. v. Rohde,* 49 Wash.2d 465, 303 P.2d 659 (1956), the insured struck three motorcycles. The trial court held that there were three occurrences. The Washington Supreme Court, however, held that there was one occurrence, because "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." 303 P.2d at 663. The court held "that the terms, 'accident' and 'occurrence,' included all injuries or damage within the scope of the single proximate cause." 303 P.2d at 663. "[T]he determination of 'occurrence' is made by reference to when the injury giving rise to the claim occurred." *Castle & Cooke, Inc. v. Great Am. Ins. Co.,* 42 Wash.App. 508, 711 P.2d 1108, 1113 (1986).

In *Westman Indus. Co. v. Hartford Ins. Group,* 51 Wash.App. 72, 751 P.2d 1242 (1988), Blaine engaged Westman to construct a boathouse. The boathouse was inadequately designed and did not conform to building code requirements. The boathouse was structurally unstable and lacked adequate resistance to wind uplift. It was destroyed in a storm in which it became airborne, broke apart, and damaged boats moored downwind. Hartford contended that the occurrence was the storm's destruction of the boathouse and the resulting damage to third-party boat owners. Westman contended that the occurrence was the building inspector's failure to notice the inadequacy of the building. The Washington Court of Appeals held:

> "While the boathouse's defective design may have been the root cause of its eventual destruction, the actual 'injury giving rise to the claim' was its destruction in the wind storm. *Castle & Cooke,* at 517, 711 P.2d 1108. Thus, the occurrence in this case was the destruction of the boathouse."

751 P.2d at 1245.

Applying Washington law,[3] we conclude that, while there may have been several possible causes of Plante's and Sandness's injuries, such as misformulation of the paint, failure to warn, breach of warranty, or negligent recommendation for use, there was but one occurrence—the explosion—that caused the plaintiffs' injuries.

The district court judgment is reversed and the matter is remanded for entry of a judgment consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**3.** While we have applied Washington law because Washington is the state with the most significant contacts with the insurance policy, we conclude that the Washington courts' analysis of the occurrence issue is sound.