**R.D. OFFUTT COMPANY, Plaintiff,**

v.

**LEXINGTON INSURANCE COM-
PANY, a foreign insurance
company, Defendant.**

**No. A3–04–79.**

United States District Court,
D. North Dakota,
Southeastern Division.

Oct. 27, 2004.

ington Insurance Company ("Lexington") to Plaintiff, R.D. Offutt Company ("RDO"). Before the Court is Lexington's motion for a change of venue (doc. # 3). Lexington is requesting that the Court transfer this case to the United States District Court for the District of Oregon. RDO has filed a brief in opposition. A hearing on the motion was held on October 12, 2004.

## Summary of Decision

Because the threshold issue in this case is the interpretation of the insurance policy under North Dakota law, this Court is in a better position to apply North Dakota law. Moreover, Lexington failed to meet its heavy burden of showing a transfer is warranted under 28 U.S.C. & sect; 1404(a). Accordingly, Lexington's motion is DENIED. If, however, as this case proceeds, it becomes evident that a transfer to Oregon would be justified for the convenience of the witnesses, the Court will revisit the issue at that time.

## Background

RDO is a Minnesota corporation with its principal place of business in Fargo, North Dakota. Lexington is a Delaware corporation authorized to do business in North Dakota by the North Dakota Insurance Commissioner. Lexington sold an insurance policy to RDO through representatives in North Dakota. The insurance policy at issue was negotiated in North Dakota, purchased in North Dakota, and premiums are paid from North Dakota.

The commercial property insurance policy issued by Lexington to RDO covered property in eight states. One of the properties is farm land operated by Threemile Canyon Farms, located near Boardman, Oregon. Threemile Canyon leases the land to several farming operations that grow a variety of crops, including alfalfa, corn, mint, onions, potatoes, and wheat.

Mark R. Hanson, Nilles, Hansen & Davies, Ltd., Fargo, ND, for Plaintiff.

## Memorandum Opinion and Order Denying Motion to Transfer Venue

ERICKSON, District Judge.

This action arises out of a commercial property insurance policy issued by Lex-

On June 29, 2002, an electrical switchgear failure occurred at the riverside pumping station for Threemile Canyon. The pumping station provides water to Threemile Canyon. The failure caused substantial damages to be incurred by RDO. The damages included expenses to repair the damaged switchgear and other equipment, expenses to rent temporary generators and supply them with diesel fuel, internal labor expenses for repairs, and expenses for preparation of the claim filed with Lexington. RDO filed a claim under the insurance policy. Lexington paid a portion of the damages, but refused to reimburse RDO for "expedited expenses." RDO estimates its expedited expenses total $264,642.61.

RDO's complaint seeks a declaratory judgment and also alleges breach of contract and bad faith. Lexington has denied coverage, asserting the claimed expenses are excluded from coverage under the "growing crops" exclusion. Further, Lexington has asserted the affirmative defense that RDO failed to mitigate or minimize any and all of its alleged damage.

Lexington has moved to transfer venue to the District of Oregon under 28 U.S.C. § 1404(a). The grounds for Lexington's request for a change of venue are that: (1) a majority of the anticipated witnesses reside in Oregon; (2) witnesses residing in Oregon cannot be compelled to appear in North Dakota; (3) documents and the site of the loss are located in Oregon; and (4) a transfer is in the interest of justice. Lexington does not dispute that this Court has jurisdiction and concedes that venue is proper in this Court. Instead, Lexington argues that Oregon would be a more convenient forum to adjudicate this matter.

Legal Discussion

Section 1404(a) of Title 28, United States Code, provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although federal district courts may transfer any civil action to another district where it could have been brought, great deference is generally afforded to the plaintiff's choice of forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Dakota W. Bank of North Dakota v. N. Am. Nutrition Companies, Inc.*, 284 F.Supp.2d 1232, 1234 (D.N.D.2003). In Gilbert, the Supreme Court stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. 839. The moving party bears the heavy burden of showing why a change of forum is warranted. *Dakota W. Bank*, 284 F.Supp.2d at 1234.

When determining whether to grant a motion to transfer, courts consider the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997). The district court's evaluation of a transfer motion, however, is not limited to these factors. *Terra Int'l*, 119 F.3d at 691. Rather, these determinations require a case-by-case evaluation of the particular circumstances in the case and a consideration of all relevant factors. *Id.*

A. Convenience of the Parties

"The 'logical starting point' for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district." 17 James Wm. Moore et al., Moore's Federal Practice § 111.13[1][e][i] (3d ed.2004). In this case, North Dakota is the location of Plaintiff RDO's principal place of business

while Defendant Lexington is a Delaware corporation with its headquarters located in Massachusetts. Oregon, on the other hand, is the location of the insured property in which the loss occurred.

■ Lexington seeks to transfer the action to Oregon, asserting that it would be more convenient for both the parties and the witnesses to litigate this case in Oregon. However, RDO chose to litigate in North Dakota. A plaintiff that chooses its home forum is generally presumed to have chosen the forum because it is convenient. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Thus, the plaintiff's choice must be afforded some deference. *Dakota W. Bank,* 284 F.Supp.2d at 1235. Transferring this action to a district court in Oregon would only serve to shift the alleged inconveniences to RDO. Merely shifting the inconveniences of the parties from one party to the other is not a permissible justification for a change of venue. *Id.*

B. Convenience of the Witnesses

■ Generally, the factor given the most weights by courts considering a motion for change of venue is the convenience of the witnesses. *May Dep't Stores Co. v. Wilansky,* 900 F.Supp. 1154, 1165 (E.D.Mo.1995). However, "[t]he party with the longest list of potential witnesses who reside in their respective district will not necessarily prevail." *Dakota W. Bank,* 284 F.Supp.2d at 1235. To determine the convenience of the witnesses, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. *Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991).

■ Lexington asserts that since the claim concerns a loss which occurred exclusively near Boardman, Oregon, adjudicating this matter in Oregon will enable both parties ease of access to witnesses, documentation, and the site of the loss and also will allow for the subpoena of witnesses to ensure compulsory attendance of any unwilling witness. In contrast, RDO contends it is the interpretation of the insurance policy that is at issue and it is likely that the fact witnesses Lexington has referred to are unnecessary to determine whether coverage exists under the policy. Instead, RDO avers its principal place of business is in Fargo and all RDO representatives involved in this matter, including Loren Stahl and F. Scott Neal, are located in Fargo. Further, RDO notes that its claim was adjusted by J.A. Stoops, a national general adjuster, located in Bloomington, Minnesota. Lastly, RDO explains that the representatives from Lexington who might testify at trial will have to travel even if the case were to be transferred to Oregon as Lexington's headquarters are located in Massachusetts.

■ The threshold issue in this case the interpretation of the insurance policy. The parties specifically contest the meaning of the growing crops exclusion and the provision regarding expedited expenses. Construction of an insurance policy is a question of state law. See *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.,* 346 F.3d 1160, 1164 (8th Cir. 2003) (state law governs the interpretation of insurance policies). As such, the Court can presume that testimony of fact witnesses will not, in all likelihood, be critical to the initial determination of coverage. Thus, the Court finds that at this time a transfer for the convenience of witnesses is not warranted. If, however, as this case proceeds, it becomes evident that a transfer to Oregon would be justified for the convenience of the witnesses, the Court will revisit the issue at that time.

## C. Interest of Justice

■ When considering the interest of justice, a court can consider: (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantage of having a local court determine questions of local law. *Terra Int'l, Inc.*, 119 F.3d at 696.

The parties dispute which substantive law will apply. In this case, the two possibilities are Oregon law (the situs of the insured property and loss) or North Dakota law (the place where the insurance policy was issued). Because this action was filed in North Dakota, North Dakota's choice-of-law rules prevail even if a transfer is granted under 28 U.S.C. § 1404(a). *Wisland v. Admiral Bev. Corp.*, 119 F.3d 733, 736 (8th Cir.1997) (concluding that in a § 1404(a) transfer, the transferee court must apply the law of the transferor court). "A § 1404(a) transfer entitles litigants to a change in courtrooms, not a change of substantive law." *Cunningham v. PFL Life Ins. Co.*, 42 F.Supp.2d 872, 880–81 (N.D.Iowa 1999) (citing 17 James Wm. Moore et al., Moore's Federal Practice § 124.30[2][a] (3d ed.2004)).

■ North Dakota has applied the most significant relationship test for resolving conflict of law questions. *Plante v. Columbia Paints*, 494 N.W.2d 140, 141 (N.D.1992); *Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386, 389 (N.D.1986). In deciding which law to apply in a case presenting multistate contacts, the significant contacts test requires a two-pronged analysis. *Nodak Mut. Ins. Co. v. Wamsley*, 2004 ND 174, ¶ 13, 687 N.W.2d 226; *Daley v. Am. States Preferred Ins. Co.*, 587 N.W.2d 159, 162 (N.D.1998). First, all the relevant contacts which might logically influence the decision of which law to apply are examined. *Id.* Second, Leflar's choice-influencing considerations are applied. *Id.* Under the second prong, the Court considers the predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. *Daley*, 587 N.W.2d at 162; *Apollo Sprinkler*, 382 N.W.2d at 389.

■ Lexington points to the following Oregon contacts: (1) multiple witnesses with direct knowledge of the loss and repair are located in Oregon; (2) the named insured is in Oregon; (3) the site of the loss is in Oregon; and (4) documents relating to the repair of the damaged property are located in Oregon. In contrast, RDO relies on the following North Dakota contacts: (1) RDO's principal place of business is located in North Dakota; (2) the policy at issue was negotiated through agents in North Dakota and was purchased in North Dakota; (3) RDO paid the premiums from North Dakota; and (4) representatives of RDO reside in North Dakota. After determining the contacts which might influence the decision of which state's law to apply, the next prong is an examination of Leflar's choice-influencing considerations to determine which state has the more significant interest in the issues involved in this case. *Daley*, 587 N.W.2d at 162.

### 1. Predictability of Results

■ The objective of the predictability factor is to fulfill the parties' justified expectations. *Daley*, 587 N.W.2d at 164. Although the rights created by an insurance contract are ordinarily determined by the law of the state that the parties understood was to be the principal location of the insured risk, the location of an insured risk has less significance when the policy covers a group of risks that are scattered

throughout two or more states. *Plante v. Columbia Paints*, 494 N.W.2d 140, 143 (N.D.1992) (quoting Restatement (Second) of Conflict of Laws § 193, comment b (1971)). Consequently, this factor favors application of the law of the state in which the insurance policy was negotiated, issued, and the premiums paid when the risks are spread among multiple states. *Wamsley*, 2004 ND 174, ¶ 16, 687 N.W.2d 226.

Given the fact that the broad form policy issued by Lexington covers property located in numerous states, including North Dakota, Minnesota, Wisconsin, Oregon, Washington, Texas, Idaho, and Nevada, the possibility exists that the construction of the insurance contract could be susceptible to several differing interpretations depending upon the state in which the underlying loss occurs. Therefore, the desire for predictability of results weighs in favor of application of North Dakota law. See *Wamsley*, 2004 ND 174, ¶ 16, 687 N.W.2d 226.

### 2. Maintenance of Interstate and International Order

Choice-of-law rules should further harmonious relations between states, facilitate commerce between states, and avoid interstate friction. *Apollo Sprinkler Co.*, 382 N.W.2d at 390. In this case, application of North Dakota law would neither "manifest disrespect" for Oregon's sovereignty nor should it cause interstate friction. *Daley*, 587 N.W.2d at 165. Therefore, the Court finds that maintenance of interstate order does not require application of Oregon law.

### 3. Simplification of the Judicial Task

■■■ " 'It will usually be easier for the forum court to apply its own law than any other.'" *Plante*, 494 N.W.2d at 143 (quoting Robert A. Leflar, et al., American Conflicts Law § 105, at 294 (4th ed.1986)). In construing an insurance policy when there are contacts with two states, typical-

ly there is little difficulty in applying either state's rules for construing insurance policies. *Id.* Under both North Dakota law and Oregon law, unambiguous terms in an insurance policy are to be given their plain and ordinary meaning. *Fisher v. Am. Family Mut. Ins. Co.*, 579 N.W.2d 599, 602 (N.D.1998); *Rainey v. Northwestern Nat'l Cas. Co.*, 44 Or.App. 43, 605 P.2d 294, 296 (1980). Further, according to the rules of interpreting insurance policies in both states, any ambiguity as to the meaning of the insurance policy will be construed against the insurer. *Fisher*, 579 N.W.2d at 602; *N. Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 22 P.3d 739, 741–42 (2001). Courts in either state will have the same tasks to perform. Thus, this factor favors application of neither state's law.

### 4. Advancement of the Forum's Governmental Interests

■■■ A state's governmental interest in a choice-of-law case is discoverable by (a) identifying the factual contacts which the litigated transaction had with that state, then (b) determining whether those contacts give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case.

*Daley*, 587 N.W.2d at 165 (quoting Robert A. Leflar, et al., American Conflicts Law § 105, at 294 (4th ed.1986)). In insurance contract cases, cause for concern exists in applying the law of a state that has significantly less contacts than another. *Id.* In this case, the insurance policy was issued to RDO in North Dakota. RDO has property or headquarters in eight states, including North Dakota. Lexington is a Delaware corporation authorized to do business in North Dakota. The broad form insurance policy was negotiated in North Dakota, purchased in North Dakota, and the policy premiums

were paid from North Dakota. The only contact with Oregon is that one of the properties insured in the policy is located in Oregon. This property in Oregon happens to be the location of the loss at issue in this case. Thus, North Dakota, not Oregon, has a more substantial governmental interest in regulating the relationship between the RDO and Lexington. Because all contacts other than the location of the loss are with North Dakota, the Court finds that North Dakota's governmental interests are advanced by application of North Dakota law. See *Daley*, 587 N.W.2d at 165. Accordingly, this factor favors application of North Dakota law.

5. Application of the Better Rule of Law

"The final consideration is whether North Dakota or [Oregon] has, in an objective sense, the better rule of law." *Daley*, 587 N.W.2d at 165. In either state, the terms of the insurance policy will be construed as a matter of law and any ambiguity in the terms will be construed against the insurer. *Fisher*, 579 N.W.2d at 602; *Hamilton*, 22 P.3d at 741–42. The parties have not presented and the Court's research has not revealed any cases from either state in which this particular insurance coverage issue has been addressed. Thus, this factor favors application of neither state's law.

After examining the relevant state contacts in light of Leflar's choice-influencing consideration, it appears North Dakota has more significant contacts and interest with regard to the issues in this case. Thus, the Court finds North Dakota law applies to this dispute and this Court is in a better position to apply North Dakota law.

Conclusion

In sum, the Court finds Lexington has not met its burden of showing that a transfer to Oregon is more convenient for the parties or witnesses, or in the interests of justice. The Court in its discretion finds that a change of venue is neither required nor warranted in this case. Accordingly, Lexington's motion for a change of venue is DENIED. If, however, as this case proceeds, it becomes evident that a transfer to Oregon would be justified for the convenience of the witnesses, the Court will revisit the issue at that time.

IT IS SO ORDERED.