# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-3975

_____

American Fire and Casualty Company

*Plaintiff - Appellant*

v.

Mary Hegel, Individually and as Personal Representative
for the Estate of Adam Fetzer

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: November 15, 2016
Filed: February 7, 2017

_____

Before BENTON and SHEPHERD, Circuit Judges, and STRAND,[1] District Judge.

_____

STRAND, District Judge.

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, sitting by designation.

This case arises out of the untimely death of Adam Fetzer, a delivery driver for the Papa John's restaurant chain who was killed in a car accident on April 28, 2012. Fetzer was driving during the course of his employment in Bismarck, North Dakota, when another driver ran a red light and struck his vehicle.

Defendant Mary Hegel, the personal representative of Fetzer's estate, demanded underinsured motorist (UIM) coverage under a business auto insurance policy (Policy) issued by plaintiff American Fire and Casualty Company (American Fire) to P J Operations, LLC d/b/a Papa John's Pizza (Papa John's). American Fire denied the claim and brought suit for declaratory judgment. On cross motions for summary judgment, the parties disputed whether North Dakota law applies to the Policy and, if so, whether American Fire is obligated to provide UIM benefits in some amount. The district court granted summary judgment against American Fire, holding: (1) North Dakota law applies; (2) American Fire is obligated to provide UIM coverage; and (3) Fetzer's estate is entitled to an award of $100,000 in UIM benefits. American Fire appealed. Having jurisdiction under 28 U.S.C. § 1291, we reverse.

## I.  BACKGROUND

The relevant facts are not in dispute. Fetzer was not at fault. At the time of the accident he was driving his own vehicle, which was covered by both a personal auto insurance policy and the American Fire Policy. The other driver, Robert Harrington, was also covered by a personal auto insurance policy, which provided $25,000 in liability coverage. Following the accident, Hegel, on behalf of Fetzer's estate, was paid the full liability amount, $25,000, from Harrington's insurance policy. Hegel then sought UIM benefits from American Fire.

American Fire is an insurance company incorporated under Ohio law with its principal place of business in Massachusetts. Papa John's is a Kentucky company headquartered in Kentucky. A Kentucky insurance agent sold the Policy to Papa

John's in Kentucky. The Policy provided liability coverage and physical damage coverage with a liability limit of $1,000,000. The Policy covered vehicles owned and used by Papa John's employees all over the country. The Policy contained numerous endorsements addressing specific state laws, including some that related to North Dakota law. Papa John's premium payment for the Policy was sent to the insurance agency's office in Middletown, Ohio. Fetzer's vehicle was licensed and garaged in North Dakota.

## II.  DISCUSSION

American Fire argues that Kentucky law controls and that the district court erred in applying North Dakota law to the Policy. American Fire notes that under Kentucky law it was not required to provide UIM coverage. American Fire also argues that even if North Dakota law applies, thus imposing a requirement to provide UIM coverage in some amount, no recovery would be appropriate in this case because Harrington was not underinsured.

### A.  Standard of Review

"We review de novo a district court's grant of summary judgment, viewing the evidence 'in the light most favorable to the nonmoving party.'" *Barkley, Inc. v. Gabriel Brothers, Inc.*, 829 F.3d 1030, 1038 (8th Cir. 2016) (quoting *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 194 (8th Cir. 1994)). "If there is 'no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate.'" *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012) (quoting *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). We may affirm a grant of summary judgment on any basis supported by the record. *Noreen v. PharMerica Corp.*, 833 F.3d 988, 992 (8th Cir. 2016) (citing *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014) (en banc)).

**B. The Choice of Law Analysis**

The parties agree that declaratory judgment is an appropriate means to resolve their dispute and that if Kentucky law applies to the Policy, then American Fire was not obligated to provide UIM coverage. In determining which state's law applies, we look to the choice of law principles of the forum state – North Dakota. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (when jurisdiction is based on diversity, the forum state's choice of law analysis applies).

North Dakota employs a two-prong test in its choice of law analysis. "With the adoption of the Leflar choice-influencing factors our significant contacts test became something of a hybrid, and effectively became a two-pronged analysis." *Daley v. Am. States Preferred Ins. Co.*, 587 N.W.2d 159, 162 (N.D. 1998). First, the court must "determine all of the relevant contacts which might logically influence the decision of which law to apply." *Id.* "Secondly, we apply Leflar's choice-influencing considerations 'to determine which jurisdiction has the more significant interest with the issues in the case.'" *Nodak Mut. Ins. Co. v. Wamsley*, 687 N.W.2d 226, 231 (N.D. 2004). The five factors to be considered under the second prong are predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. *Apollo Sprinkler Co. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386, 389 (N.D. 1986) (internal citations omitted).

The first prong, relevant contacts, is straight-forward. Papa John's is headquartered in Kentucky and bought the Policy from a Kentucky insurance agent. Papa John's negotiated the terms of the Policy in Kentucky and the Policy was delivered to Papa John's in Kentucky. American Fire is incorporated in Ohio, which is also where Papa John's sent payment for the Policy. American Fire does business nationally and, as is clear from the various endorsements included in the Policy, the Policy was intended to cover Papa John's employees across the country. Meanwhile, all contacts relating to the accident occurred in North Dakota. Fetzer worked for a

North Dakota Papa John's, all parties to the accident lived in North Dakota and the accident occurred in North Dakota.

The North Dakota Supreme Court addressed a similar factual situation in *Plante v. Columbia Paints*, 494 N.W.2d 140 (N.D. 1992). Using a Washington insurance agent, a Connecticut insurer issued a policy to an Idaho corporation to cover activities in numerous states, including North Dakota. *Id.* at 142. The policy was issued and accepted outside of North Dakota. *Id.* Two North Dakota residents were injured in an explosion in North Dakota while using the insured's products and filed a declaratory action concerning the extent of the insurance coverage. *Id.* at 141-42. The parties disputed the applicability of certain coverage provisions. *Id.* at 141.

On appeal from the trial court's determination that North Dakota law applied to the policy, the North Dakota Supreme Court first identified the relevant contacts as follows:

> There are a number of multistate contacts to be considered. Parnell Plante and Mark Sandness are North Dakota residents who were injured in an explosion in North Dakota while using a Columbia paint that had been sold to their employer, a North Dakota painting company, by a Columbia corporate store located in North Dakota. Plante and Sandness filed personal injury actions in North Dakota. Columbia's insurance policy from Hartford was intended to provide coverage for Columbia's retail functions in North Dakota, as well as in other states. Columbia obtained the Hartford insurance policy through Jones & Mitchell (Jones), a Washington insurance broker and agent. Jones delivered the policy to Columbia in Washington. Columbia paid the insurance premiums to Jones in Washington and the policy was intended to cover Columbia's retail and manufacturing functions in Washington, as well as in North Dakota and other states. Columbia maintained corporate headquarters in Washington, as well as in Montana. Columbia is an Idaho corporation. Hartford is a Connecticut corporation. The insurance policy was intended to cover Columbia's retail and

> manufacturing functions in Idaho, Montana, and South Dakota, as well
> as in Washington and North Dakota. The paint involved in this case was
> produced in Columbia's plant in Helena, Montana, and shipped from
> there to North Dakota.

*Plante*, 494 N.W.2d at 142. The Court then applied the five factor test. Regarding predictability of results, the Court found:

> The rights created by a casualty insurance contract are ordinarily
> determined "by the local law of the state which the parties understood
> was to be the principal location of the insured risk." *Restatement
> [(Second) of Conflict of Laws], supra*, § 193. However, the location of
> an insured risk has less significance when "the policy covers a group of
> risks that are scattered throughout two or more states." Restatement,
> supra, § 193, comment b. We conclude Hartford and Columbia are more
> likely to have thought that the coverage provided would be determined
> in accordance with the law of Washington, where the contract was
> negotiated, the policy was delivered, and the premiums were paid, than
> in accordance with the law of any other state.

*Id.* at 143. The Court did not make an express finding regarding the maintenance of interstate order but implied that interstate order was aided by applying the law of the state with the most significant contacts. *Id.* The Court also found that simplification of the judicial task favored the application of Washington law because the specific coverage issue in dispute was a matter of first impression in North Dakota. *Id.*

Regarding the forum's interest, the Court stated that while North Dakota clearly had some interest in applying its own law, because the victims resided in North Dakota, applying North Dakota law would be "the kind of 'chauvinistic parochialism' [] sought to be avoided by modern choice-of-law analysis." *Id.* (internal citations omitted). Finally, as for the better rule of law:

> The insurance coverage question presented in this case is one of first
> impression in this state. Our rule of law has not yet been formulated.

> If we were to formulate a North Dakota rule of law to apply in construing the policy language different than the applicable Washington rule of law, our belief in our own rule would be "insufficient under the circumstances presented in this case to override other relevant considerations militating in favor of the application of [Washington] law in the construction of the insurance policy at issue." *Apollo, supra*, at 391. We conclude that Washington is the state with the most significant contacts with the insurance policy and that the trial court erred in ruling that North Dakota law was applicable.

*Id.* at 144.

While *Plante* is similar to the present case, there are some distinctions. First, North Dakota has a statute requiring UIM coverage. This means that in contrast to the situation in *Plante*, this court would not be required to formulate the appropriate legal standard if North Dakota law is applied. Second, the difficulty of applying the law is a moot issue for us, as federal courts routinely apply the laws of various states. *See Hughes v. Wal-Mart, Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001). Third, the *Plante* Court did not make a definitive finding regarding interstate order. Here, the district court found that when an insurance policy is sold interstate, with knowledge that it will be applicable in numerous states, interstate order is best served by applying the law of the state in which a loss occurs rather than by importing foreign law into each such state.

Even with these distinctions, however, the primary thrust of *Plante* is that when insurance coverage is at issue, the location of the accident has "less significance" when the policy covers risks that are scattered throughout two or more states. *Plante*, 494 N.W.2d at 143 (citation omitted); *see also Schleuter v. N. Plains Ins. Co.*, 772 N.W.2d 879, 885 (N.D. 2009) (applying South Dakota contract law when the contact with North Dakota was the location of the accident giving rise to the insurance claim). The District of North Dakota recognized this in *R.D. Offutt Co. v. Lexington*

*Ins. Co.*, 342 F. Supp. 2d 838 (D.N.D. 2004). That case presented the same situation as this case, but in reverse.

In *Offutt*, a Delaware insurance company sold a policy in North Dakota to a corporation that had its principal place of business in North Dakota. *Id.* at 840. The policy covered business activity in several states. *Id.* After an accident in Oregon, the insurer denied coverage under the policy and the insured filed a declaratory judgment action in North Dakota. *Id.* at 841. The insurer then moved to transfer venue to Oregon. *Id.* at 841. In denying the motion, the court found that under North Dakota's two-pronged choice of laws analysis, North Dakota law applied to the coverage dispute, noting that "all contacts other than the location of the loss are with North Dakota." *Id.* at 843-45. It is clear, then, that in considering the relevant contacts at the first prong of North Dakota's choice of law analysis, the location of the accident is of less significance to an insurance coverage dispute.

The second prong requires application of the five factors outlined above. American Fire argues that the first four factors weigh in favor of Kentucky law, while the fifth factor is not relevant because, it asserts, the outcome is the same regardless of which state's law applies. Hegel argues in favor of the district court's analysis.

The first factor, predictability and uniformity of result, is of particular importance in those areas in which the parties are likely to give advance thought to the legal consequences of their transactions. *Apollo Sprinkler Co.*, 382 N.W.2d at 390 (citing Restatement (Second) of Conflict of Laws § 6, comment I (1971)). This court has observed that "[p]redictability of results plays an important role when parties enter into contracts, but accidents are not planned." *Kenna v. So-Fro Fabrics, Inc.*, 18 F.3d 623, 626 (8th Cir. 1994). That is because "[p]arties do not commit torts in one state rather than another because of that state's tort laws." *Id.* The planned event in this case, the creation of an insurance contract, occurred in Kentucky. It was sold by a Kentucky insurance agent to a Kentucky business, to cover business

-8-

activities in both Kentucky and the rest of the United States. As the *Offutt* court aptly explained:

> Given the fact that the broad form policy issued by Lexington covers property located in numerous states, including North Dakota, Minnesota, Wisconsin, Oregon, Washington, Texas, Idaho, and Nevada, the possibility exists that the construction of the insurance contract could be susceptible to several differing interpretations depending upon the state in which the underlying loss occurs. Therefore, the desire for predictability of results weighs in favor of application of North Dakota law.

*R.D. Offutt Co.*, 342 F. Supp. 2d at 844. Here, applying Kentucky law to the Policy creates the most predictable result.

The next two factors do not weigh heavily on this court's decision. Quite simply, interstate harmony is not implicated. The standard in North Dakota is whether the application of one state's law would show manifest disrespect for another state. *Daley*, 587 N.W.2d at 164-65. Applying Kentucky law to an insurance contract formed in Kentucky would not show disrespect to North Dakota. Nor would applying North Dakota law show disrespect to Kentucky if North Dakota had more significant contacts to the dispute. Similarly, simplification of the judicial task is a non-issue because a federal court is well-suited to apply the law of any state.

Under North Dakota precedent, advancement of the forum's interests also weighs in favor of applying Kentucky law:

> A state's governmental interest in a choice-of-law case is discoverable by (a) identifying the factual contacts which the litigated transaction had with that state, then (b) determining whether those contacts give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case. *Daley*, 1998 ND 225, 31, 587 N.W.2d 159 (quoting Robert A. Leflar, *et al.*, American Conflicts Law

§ 106, at 295 (4th ed. 1986)). We have said that North Dakota can have no substantial governmental interest in regulating the relationship between out-of-state insurance companies and their out-of-state insureds. *See Plante*, 494 N.W.2d at 143; *Apollo Sprinkler Co.*, 382 N.W.2d at 391.

*Nodak*, 687 N.W.2d at 234. However, instead of focusing on the relationship between the insurance company and the insured, the district court focused on the fact that the insurance covered an accident in North Dakota and the victim was a North Dakotan. After focusing on those contacts, the district court concluded that the forum's governmental interest weighed in favor of applying North Dakota law. However, the entire history of the insurance contract at issue occurred in Kentucky. Papa John's is a Kentucky business that purchased the Policy from a Kentucky insurance agent. Accordingly, because this case involves an out-of-state insurance company and an out-of-state insured, North Dakota has no substantial governmental interest.

The final factor, the better rule of law, favors neither party. This factor asks whether North Dakota has an objectively better rule of law. *Daley*, 587 N.W.2d at 165. The North Dakota Supreme Court has recognized that "[s]ometimes different laws are neither better nor worse in an objective way, just different." *Nodak*, 687 N.W.2d at 234 (quoting *Jepson v. General Cas. Co.*, 513 N.W.2d 467, 473 (Minn. 1994)). North Dakota requires UIM coverage while Kentucky does not. Neither side makes a compelling argument that either law is objectively "better." The laws are simply different. Thus, this factor does not favor the application of either state's law. Additionally, as discussed in note 2, *infra*, there is no practical difference between the application of Kentucky law and North Dakota law in this case, as Hegel would not be entitled to a recovery under North Dakota law.

Accordingly, two factors favor the application of Kentucky law and no factor favors application of North Dakota law. We conclude that the district court erred in

applying North Dakota law and, as a result, in finding that American Fire was required to provide UIM coverage to Papa John's. Instead, the Policy is subject to Kentucky law, which does not require such coverage.[2] American Fire is entitled to judgment in its favor as a matter of law.

## III. CONCLUSION

The judgment of the district court is reversed and this case is remanded with instructions to enter judgment in favor of American Fire.

_____

_____

[2]We note that under the facts present here, Hegel would not be entitled to UIM benefits under the Policy even if North Dakota law applies. N.D. Cent. Code § 26.1-40-15.3(1) requires an insurer to "provide [UIM] coverage at limits equal to the limits of uninsured motorist coverage." N.D. Cent. Code § 26.1-40-15.2 mandates uninsured motorist coverage in the amount set forth in N.D. Cent. Code § 39-16.1-11 which, in turn, requires at least $25,000 in coverage due to the bodily injury to or death of one person in any one accident. While North Dakota law is silent as to what the coverage limit should be when a policy fails to include mandatory coverage, other courts have consistently imposed the minimum coverage required by law. *See, e.g., Gailor v. Alsabi*, 990 S.W.2d 597, 606 (Ky. 1999); *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 710 (10th Cir. 2005). Here, the district court cited no law supporting its determination that American Fire was required to provide $100,000 in UIM benefits. We conclude that if North Dakota law applies, American Fire would be required to provide no more than the statutory minimum in UIM benefits. Moreover, because Harrington's policy provided $25,000 in liability coverage, the at-fault vehicle does not meet the definition of an underinsured motor vehicle under North Dakota law. See N.D. Cent. Code Ann. § 26.1-40-15.1(2) ("Underinsured motor vehicle" means a motor vehicle "for which there is a bodily injury liability insurance policy" but the applicable limit either (a) "[i]s less than the applicable limit for [UIM] coverage under the insured's policy" or (b) "[h]as been reduced by payments to other persons injured in the accident to an amount less than the limit for [UIM] coverage under the insured's policy"). Thus, under North Dakota law, Hegel is not entitled to UIM benefits.